UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| MONSERRATE NORIEGA-SANCHEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>FORD MOTOR COMPANY;<br>BRIDGESTONE/FIRESTONE NORTH<br>AMERICAN TIRE, LLC.;<br>BRIDGESTONE/FIRESTONE, INC.,<br>X, Y, and Z INSURANCE COMPANIES;<br>CLARK DOE, MARK DOE, JOE DOE,<br>ROBERT DOE, AND JOHN DOE,<br><br>    Defendants. | Civil No. 05-1967 (RLA/JAF) |

**OPINION AND ORDER**

This is a near four-year-old civil litigation case that is being addressed as part of our obligation to dispose of three-year-old-and-older cases under the Directives of the Judicial Conference of the United States. *See* Misc. 09-59 (JAF)(Docket No. 168).

**I.**

**Introduction**

This case is a products-liability action brought by Plaintiff Monserrate Noriega-Sánchez ("plaintiff") against Ford Motor Company ("FMC"), Bridgestone/Firestone North American Tire LLC. ("Firestone"), Bridgestone/Firestone, Inc., and other unknown persons and corporations. Plaintiff alleges that the Firestone tire on her vehicle failed and during the ensuing accident, the air bag

Civil No. 05-1967 (RLA/JAF)                                                                    -2-

in her vehicle did not function properly, causing the injuries for which she seeks damages. Plaintiff's causes of action against defendants are brought under strict liability and negligence theories, alleging defects in the design, manufacture, or construction of the tire and air bag.

Firestone moves to exclude from trial the opinion testimony of plaintiff's expert, Jeffrey Ketchman ("Ketchman"), hereinafter referred to as "Firestone's motion."[1] (*See* Docket No. 111.) Firestone further moves for summary judgment pursuant to FED. R. CIV. P. 56(c) on grounds that upon the exclusion of Ketchman's testimony, plaintiff will be unable to establish the prima-facie elements of her causes of action. Ford joins Firestone's motion. (Docket No. 112 n.3.) Plaintiff opposes Firestone's motion. (*See* Docket Nos. 121 and 125.) After careful review and consideration of the arguments and pertinent law, we grant in part Firestone's motion to exclude and defer judgment on Firestone's motion for summary judgment.

## II.

### Factual and Procedural Background

The following relevant facts are deemed uncontested by the court because they were included in Firestone's motion or

---

[1] FMC moves on different grounds to exclude the opinion testimony of Ketchman and for summary disposition. (*See* Docket No. 112.) FMC's motion for summary disposition will be disposed of separately.

Civil No. 05-1967 (RLA/JAF)                                                -3-

plaintiff's opposition, properly supported by evidence, and either admitted or not genuinely opposed. On September 12, 2004, plaintiff was driving her 1995 Ford Explorer (the "Explorer") northbound on Highway 52 in the municipality of Juana Díaz, Puerto Rico, when the original equipment Firestone FR 480 passenger tire (the "tire"), mounted on the rear left side of the vehicle, allegedly failed, after which plaintiff lost control of her Explorer. Plaintiff's wrist was broken in the ensuing accident. Plaintiff alleges that the injury to her wrist and other, less-defined injuries, are affecting her ability to carry out her duties as a neurologist.

On September 12, 2005, plaintiff filed a complaint against FMC and Firestone, among others, alleging that the tire "blew out" due to a "defect of design or construction, due to tread separation and other defects" (Docket No. 1, ¶ 9), and that the air bag "did not promptly open or work" (Docket No. 1, ¶ 10). Plaintiff's claims are brought under strict liability and negligence theories. (*See* Docket No. 1, ¶¶ 26-31.) Plaintiff designated Ketchman as her sole liability expert to discuss alleged defects in the design or construction of the tire and the causal connection of such defects to the accident (*see* Docket Nos. 24 at 29 and 32 at 2).[2]  Ketchman

---

[2]   It does not appear that plaintiff offers the opinion testimony of Mr. Ketchman for the purpose of establishing defects in the design, manufacture or construction of the air bag and the issue is not addressed in Firestone's motion. As such, we do not evaluate Ketchman's qualifications to testify as an expert in that regard.

Civil No. 05-1967 (RLA/JAF)                                                          -4-

acquired experience working with tires and tire technology through his work as a mechanical engineer[3] for the Tire Equipment Division of AMF, Inc. ("AMF") between 1976 and 1985, as well as his work for InterCity Testing and Consulting Corporation[4] ("InterCity") between 1987 and present.

In his July 2007 deposition, Ketchman opined that the tire had two design defects: (i) a belt wedge gauge[5] designed too thin for the tire; and (ii) a belt wedge compound that is not as resistant to tread belt separation as other available compounds. (*See* Docket No. 111-3 at 90-91.) In his supplemental expert report, dated January 20, 2007, Ketchman opines that the above two design defects caused a tread separation in the tire:

> [T]he subject tire was defectively designed and possibly defectively manufactured. It is known that belt-to-belt separation, such as occurred here, can be caused by the spread of

---

[3] Ketchman earned a master's degree in mechanical engineering from Ohio State University in 1967 and a doctorate of engineering science from Columbia University in 1972. (*See* Docket No. 111-6.)

[4] Inter-City provides Forensic Engineering, Consulting and Expert Testimony to law offices, insurance companies and government agencies. *See* http://www.intercitytesting.com (visited July 31, 2009). Inter-City has offices in New York, California, and Florida. (*See* Docket No. 111-2 at 36.) In 2005, Ketchman acquired a one-third ownership interest in Inter-City - New York. According to Ketchman, approximately eighty-five to ninety-five percent of Inter-City's work is litigation related, with the remaining work being product development or product-testing related. (*See* Docket No. 111-2 at 79.)

[5] The "belt wedge" is "a strip of rubber located near the edges of the steel belts that serves to cushion the stresses caused by the operation of a steel belted radial tire." (Docket No. 111 n.3.) The "gauge" is the "thickness of the belt wedge, as opposed to its length or width." (Docket No. 111 n.4.)

> cracks that initiate at the outer edge circumferences of the belts, under the action of tire flexing during operation . . . To help resist crack formation at the belt edges, manufacturers have employed belt edge inserts (BEI) and additionally "belt wedges", which are thin tapered circumferential strips of rubber inserted between the first and second belts . . . The submitted specifications indicate that the FR480 has belt edge inserts (BEI) and belt wedges. The BEI compound was changed, between the 1998 and 1994 Specifications, from DMS17 to V1697 . . . The <u>belt wedge thickness of .020 inches</u> did not change, nor has the rubber compound, J2917. It is to be noted, . . . that one of the changes that was made to help solve the belt separation problems of the Firestone Wilderness AT and ATX tires was to <u>increase the inner belt gauge/thickess from .021 to .025 inches or close to 20 percent</u>. Also <u>the wedge material was changed</u> to be the same as that of the skim coating rubber used on the Stabilizer plies of the FR 480, compound J257. The stabilizer plies lie under both steel belts and also have to resist heat and strain in a similar manner. Even though the Wilderness tires and the FR480 are different tires, the basic design of the tires is substantially alike (radial plies/ belt edge inserts/ belt wedges/materials, etc) such that the design practices developed for preventing belt-to-belt separation is common across sizes and models. Thus it appears that <u>the FR480 design was defective because the belt wedge was too thin and the material was not selected for adequate crack-formation resistance</u>, even though it was available and used elsewhere in the tire.

(Docket No. 121-5). In his expert reports, dated June 13, 2006, and January 20, 2007, Ketchman refers to the possibility of a manufacturing defect in the tire (*see* Docket Nos. 121-4 at 9 and

Civil No. 05-1967 (RLA/JAF)                                          -6-

121-5 at 1), but later concedes in deposition that he found no defects in the manufacture of the tire and offers no opinions to that effect (*see* Docket No. 111-3 at 97).

### III.

### Firestone's Motion to Exclude the Opinion Testimony of Jeffrey Ketchman

Firestone contends that the proposed opinion testimony of Ketchman is "unqualified and scientifically unsupported" and, therefore, must be excluded pursuant to the mandates of *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) and *Kumho Tire v. Carmichael*, 526 U.S. 137 (1999). (Docket No. 111 at 1.) Firestone specifically contends that Mr. Ketchman (1) is not qualified to offer expert opinions in on matters of tire design and (2) offers testimony that does not meet the requisite reliability and admissibility standards for expert testimony. We do not reach Firestone's second argument because we do not find Ketchman sufficiently qualified to offer certain opinion testimony in this case.

**1.  Ketchman's Qualifications Pursuant to Rule 702 Standard**

Relying primarily on Ketchman's deposition testimony[6] and expert reports, Firestone contends that Ketchman has "no

---

[6] Firestone relies on Ketchman's July 2007 deposition testimony in this case and Ketchman's June 2006 deposition testimony in Easterling v. Bridgestone/Firestone North American Tire, LLC, et al., which venued in the Eighth Judicial Circuit, Alachua County, State of Florida. (Docket No. 111-2.)

qualifications to render the tire design and tire failure analysis opinions he seeks to offer here." (Docket No. 111 at 2.) We agree, in part.

A district court must determine if a witness offering expert opinion testimony is qualified "by knowledge, skill, experience, training, or education." United States v. Vargas, 471 F.3d 255, 262 (1st Cir. 2006) (citing Fed. R. Evid. 702); Santos v. Posadas De Puerto Rico Associates, Inc., 452 F.3d 59 (1st Cir. 2006) (citing Fed. R. Evid. 702); Prado v. Alvarez v. R.J. Reynolds Tobacco Co., 405 F.3d 36, 40 (1st Cir. 2005) (citing Fed. R. Evid. 702). Trial judges have considerable discretion to decide the qualifications of an opinion witness. "The test is whether, under a totality of the circumstances, the witness can be said to be qualified as expert in a particular field, through any one or more of the five bases enumerated in Rule 702-knowledge, skill, experience, training, or education." Santos v. Posadas De Puerto Rico Associates, Inc., 452 F.3d 59, 63-64 (1st Cir. 2006).

Plaintiff offers Ketchman as an expert on tire design and tire failure analysis, among other expertise.[7] In consideration of the defects alleged by Ketchman, we look for Ketchman's qualifications

---

[7] Plaintiff also offers Ketchman as an expert in automotive accident reconstruction or "accident sequence." (Docket No. 121-4 at 9.) Firestone's motion does not challenge Ketchman's qualifications to offer testimony as an expert on automotive accident reconstruction and, therefore, we do not address Ketchman's qualifications in that regard.

Civil No. 05-1967 (RLA/JAF)                                                          -8-

to testify as an expert on belt wedge design and its connection to belt-to-belt tread separation in a Firestone FR480 steel-belted radial passenger tire. After a thorough review of the pleadings, we conclude that Ketchman is qualified to testify as an expert on tire failure analysis in this case, but only with respect to whether or not a tread separation occurred in the tire. We do not find Ketchman qualified to testify as an expert on tire design or more specifically, belt wedge design and its causal connection, if any, to tread separation in the tire.

As a preliminary matter, we address Firestone's effort to characterize Ketchman as a "generalist expert-type witness." (Docket No. 111.) Indeed, Ketchman would appear to have been retained for his expertise on a variety of products in conjunction with his work for InterCity.[8] While interesting, Ketchman's work in other cases dealing with other products is not dispositive on the

---

[8]   Firestone notes Ketchman's experience providing technical consultation and testimony on wheelchairs, lawnmowers, glass bottles, lanterns, wood chippers, pallet jacks, motorcycles, saws, oil drilling rigs, bakery machinery, elevators, washing machines, ladders, pulse monitors, bread making equipment, escalators, airline storage bins, shears, road wideners, needle containers, tanker trucks, garbage trucks, grinders, bus doors, ski bindings, meat slicers, hunting bows, hard hats, newspaper dispenser box, front end loaders, seat belts, tractors, hydraulic tools, food racks, salt spreaders, paint ball guns, forklifts, windows, trampolines, snow plows, printing presses, filament winding machines, amusement and recreation park rides, apparel stitching equipment, generators, relays, time remoters, fire and explosion products, glass and ceramic products, lighting fixtures, dimmers, electronic converters, coatings, directional drilling, pipelines pegs, woodworking, metal, sonar, exercise bicycles, racquets, tobacco and cigarette making equipment, boats, mopeds, golf carts, etc. (*See* Docket No. 111-2 at 65-75.)

Civil No. 05-1967 (RLA/JAF)                                                -9-

issue of whether Ketchman is qualified to testify as an expert on the technical matters at issue in this case. Accordingly, our opinion is not influenced by such information.

More on point, Firestone argues that Ketchman is not qualified to testify as an expert on tire design and tire failure analysis in this case because he (1) has no formal training and no educational course work in passenger tire failure analysis (*see* Docket No. 111-3 at 149); (2) has no training in rubber or polymer chemistry (*see id.* at 138); (3) has never prepared the rubber specifications for any rubber compound or held a position as a rubber compounder (*see* Docket No. 111-3 at 138); (4) has never designed a passenger tire or prepared the design specifications for any passenger tire (*see id.* at 136); (5) has never designed a belt wedge tire component (*see* Docket No. 111-3 at 137); (6) has never designed any component for a new, passenger tire (*see id.* at 137); (7) has never been retained by any tire company to consult in the formulation of a rubber compound to be used in a belt wedge (*see* Docket No. 111-3 at 423); (8) has never designed methods of operation for any tire plant (*see id.* at 134); (9) has been in a tire plant on only one or two occasions as an observer, over twenty years ago (*see* Docket No. 111-3 at 135-36); (10) has never worked for a tire company that designs or manufactures tires (*see id.* at 142); (10) has never been asked to testify by any tire designer

Civil No. 05-1967 (RLA/JAF)                                            -10-

about tire failure analysis, tire design, or rubber formulation for use in a tire, including its belt wedge (*see* Docket No. 111-3 at 423-24); (11) has never performed any testing on any tire product, including testing regarding high speed, under-inflation, overloading, internal temperatures, stresses, dynamic or drum testing, rubber cohesion, tire aging, or chemical composition in tires[9] (*see* Docket Nos. 111-2 at 117-20 and 111-3 at 159-81); (12) has never prepared, produced or published any paper, treatise or other literature in the field of tire design or manufacture (*see* Docket No. 111-3 at 134-35); (13) has never been qualified in any federal court to render opinions as a tire design expert (*see id.* at 145-46); (14) has examined fewer than twenty tires with tread belt separation during the time he worked for the AMF Tire Equipment Division and InterCity (*see* Docket No. 111-3 at 154); and (15) has never been a member of any organization that focuses its activities on tires or tire technology (*see id.* at 140-41).

Ketchman's deposition testimony does not comport with two of Firestone's stated facts. First, Ketchman does not concede that he has never been affiliated with any organization that focuses on tires and tire technology. Ketchman stated in deposition that he

---

[9] Although not noted in Firestone's Motion, Ketchman also concedes in deposition that he has never performed tests designed to produce tread belt separation (*see* Docket No. 111-2 at 120) or to compare the performance of tires with different wedge gauges or wedge compounds (*see* Docket No. 111-3 at 164).

Civil No. 05-1967 (RLA/JAF)                                          -11-

was a member of the Tire and Rim Association through his association at AMF.[10] (*See* Docket No. 111-3 at 140.) Second, Ketchman does not concede that he has never been qualified by a court to offer an opinion on tire manufacture or design. As noted in plaintiff's opposition, Ketchman stated in deposition that a court in New Jersey qualified him to offer such an opinion; however, that opinion, provided more than ten years ago, did not concern a tire belt wedge. (*See* Docket No. 111-3 at 146-47.)

In response to Firestone's contention that Ketchman has no experience in the design of rubber compounds, plaintiff references Ketchman's "experience [at AMF] in the use of rubber and composite constructions in the design of products such as tires, industrial hoses, couplings, vibration isolators and sports equipment." (Docket No. 121-6.) Plaintiff's response is not compelling for two reasons. First, plaintiff fails to state whether such

---

[10] In Ketchman's statement, submitted in support of plaintiff's opposition, Ketchman lists the organizations in which he currently holds membership to include: Accreditation Commission for Traffic Accident Reconstruction (ACTAR) (peer review Committee), American Society of Mechanical Engineers, American Society of Safety Engineers, System Safety Society, American Society of Testing and Materials, Society of Automotive Engineers, American College of Forensic Examiners, Institute of Diagnostic Engineers (UK), New York Academy of Sciences, American Association for Advancement of Science, Association of Research Directors, National Association of Professional Accident and Reconstruction Specialists. (Docket No. 121 at 9.) Plaintiff does not offer information as to which, if any, of the above-listed organizations, or subgroups thereof, are focused on tires or tire technology and the extent of Ketchman's participation in such organizations or subgroups.

Civil No. 05-1967 (RLA/JAF)                                          -12-

"constructions" included belt wedges. Second, the "use of" rubber and composite constructions is not equivalent to their "design."

In opposition to Firestone's motion, Plaintiff takes the position that Ketchman is qualified by his "on-the-job training" and "research and development of techniques for tire failure analysis"[11] while at AMF between 1976 and 1985, as well as his work in "tire failure analysis" for InterCity between 1987 and present (*See* Docket Nos. 121 at 6 and 121-3 at 02-03). We, therefore, focus on Ketchman's relevant work experience at AMF and Inter-City.

At AMF, Ketchman consulted on various types of AMF products,[12] including a tire retreading process (*see* Docket No 111-2 at 52, 62). In his June 2006 deposition, Ketchman represented that he carried out one-hundred percent of his tire-related work at AMF for the tire equipment division and that such work "was related to, in various ways to the retreading processing, either for the design or development of equipment for that or for analytical techniques to assist in the tire retreading process." (Docket No. 111-2 at 63.) Ketchman describes the project he worked on at AMF as "a project devoted to helping the tire division find,

---

[11] Such techniques included "x-ray techniques, ultrasound techniques, acoustic emission techniques." (*See* Docket No. 111-3 at 149.)

[12] Such products included without limitation bakery machinery, bakery equipment, apparel equipment, tire, rubber processing equipment, filter housings, lawnmowers, motorcycles, golf carts, bicycles, sporting equipment, electro-mechanical relays. (*See* Docket No. 111-2 at 60.)

Civil No. 05-1967 (RLA/JAF)                                        -13-

hopefully find a quick sure method of assessing whether a used tire was suitable for retreading" (Docket No. 111-2 at 62). Notably, the retreading process at AMF with which Ketchman worked primarily involved truck tires. (Docket Nos. 111-2 at 64 and 111-3 at 137.) Ketchman's responsibilities at AMF included the development of tire buffing blades and analysis of the buffing process, tire carcass and tire body. (*See* Docket Nos. 121-6 and 111-2 at 62.) In his July 2007 deposition, Ketchman described his duties at AMF with more ambiguity, as including responsibility for "research in tire-defect analysis" and "research in methods of determining defects in tires as a corporate project." (Docket No. 111-3 at 150.) Ketchman's tire-related work for the AMF tire equipment division constitutes roughly ten to fifteen percent of his nine years with AMF (*see* Docket No. 111-2 at 61-62) and ultimately led to a patented, commercialized process for retreading used tire carcasses (*see* Docket Nos. 121-3 at 02 and 111-3 at 136-37). During his time with AMF, Ketchman examined fewer than ten tires with tread belt separation. (Docket No. 111-3 at 153-54.)

    Since 1987, Ketchman has been "involved in tire failure analysis" for InterCity, most of which is litigation related. (Docket No. 121 at 2.) At Intercity, Ketchman "investigated, directly and as a side-investigator . . . some tire tread separations that have lead to accidents." (Docket No. 111-3 at

Civil No. 05-1967 (RLA/JAF)                                          -14-

405.) During his time with InterCity, Ketchman evaluated fewer than ten tires with tread separation (*see* Docket Nos. 111-3 at 148 and 152) and served as an expert on tread-belt separation on "maybe half a dozen" occasions (*see* Docket No. 111-3 at 407).

Ketchman spoke to his own qualifications in deposition. When asked whether he has any formal training in tire failure analysis, Ketchman responded "I do not have formal training in the sense of a course. My training comes from experience from working with people at AMF who were involved in the industry, from attending presentations as we have discussed, and from reading and from participating in tire failure analyses while I have been here at Intercity." (Docket 111-2 at 96). When asked why he is qualified to testify as an expert on tread-belt separation in this case, Ketchman responded that he is qualified because he has experience in "examining" and "reading them", he knows "tire construction", and he has "worked on putting tread on retreaded tires" as part of his work at AMF. (Docket No. 111-3 at 408.) When asked what knowledge he had of belt wedge design, Ketchman responded "well, the knowledge comes from the nature of tire design and tire deflection; the action of laminated layers, like steel belts, acting next to each other in bending, generating shearing forces; and the – effect that a –- that a wedge or putting material between those layers can have; and from specific reading such as the

Civil No. 05-1967 (RLA/JAF)                                        -15-

studies that have been done on . . . the Wilderness studies and the NHTSA studies." (Docket No. 111-3 at 406.)

Noticeably absent from plaintiff's opposition and Ketchman's own deposition testimony is any indication that Ketchman's work for AMF or InterCity involved belt wedge design or, more importantly, belt wedge design as a factor in causing or preventing tread separation. We glean from the record that Ketchman's limited knowledge of belt wedge design and its possible effect on tread separation in other tire models, such as the Firestone Wilderness AT tire, has been acquired through the study of one or two studies conducted by others, including those conducted by the defendants. (*See* Docket No. 121-3 at 4 ("[K]nowledge of the defect in the subject tire manufacture became known from materials produced by the Defendant during discovery in this case and from the Defendant's investigation of failures of other steel belted radial tires, such as the Wilderness tires."))(*See, e.g.*, Docket No. 111-3 at 73-87 (discussing the NHTSA[1] report)). Under these circumstances, we do not find Ketchman qualified by his knowledge, skill, experience, training, and education to offer opinion testimony on tire design or more specifically, belt wedge design and its causal connection to tread separation in the FR 480 steel belted radial passenger tire. In light of Ketchman's work

---

[1] NHTSA is the acronym for the National Highway Transportation Safety Administration.

Civil No. 05-1967 (RLA/JAF)                                                -16-

evaluating tread separation at AMF and InterCity, we do find him qualified to offer opinion testimony as an expert on the issue of whether a tread separation occurred in the tire.

## IV.

## Conclusion

For the reasons stated above, Firestone's Motion to exclude the opinion testimony of Plaintiff's expert Ketchman is **GRANTED IN PART AND DENIED IN PART.** A decision on Firestone's motion for summary judgment is deferred until such time as the court has had an opportunity to confer with the parties at a **Settlement Conference to be held on September 24, 2009, at 1:30 P.M.** Counsel must appear authorized to settle the case.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 2nd day of September, 2009.

                              S/José Antonio Fusté
                              JOSE ANTONIO FUSTE
                              Chief U. S. District Judge